## STARK v. HOPSON.

1. In action by a widow for dower in the lands of her husband, especially in those sold during his life, she is not required, under the issue of non-seizin, to make strict proof of her husband's title; she may make out a *prima facie* case by the slightest and lowest order of evidence.

2. It is error to strike out on motion testimony as incompetent under section 400 of the code, where such testimony had been previously given without objection.

3. A probate judge struck out certain testimony as incompetent and decided the case without regarding it; the Circuit judge held the excluded testimony to be competent, but sustained the decree of the court below, after taking such testimony into his consideration. *Held*, that the Circuit judge erred; that he should have ordered a new trial, so that this testimony might be considered in the first instance by the probate judge.

Before FRASER, J., Richland, July, 1883.

For a full understanding of the points decided on this appeal, the case is sufficiently stated in the opinion of this court.

*Messrs. Bacon & Moore,* for appellant.

*Messrs. Clark & Muller,* contra.

November 20, 1884. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was a petition in the probate court of Richland County by Eliza C. Stark, the widow of Theodore Stark, deceased, for dower in a square of land in the city of Columbia, described as containing four acres, more or less, and bounded by Taylor, Harden, Laurens, and Blanding streets. It was admitted that the petitioner was married to Theodore Stark, deceased, in April, 1835, and that he had recently died (the precise date not given), leaving the petitioner him surviving. It was also admitted that the defendant, Hopson, was in possession of part of the aforesaid square; so that the only question in the case was that of the seizin of Stark during the coverture.

It seems that the square, having no house on it, was not actually occupied by any one until about the year 1840. Mrs. Stark testified, without objection at the time, that "Major Stark was in possession of the square during her marriage with him, owned and controlled it, and paid taxes on it, but never lived on it, or cultivated it, as it was an open lot." On her cross-examination she said that "Major Stark came in possession of it long before her marriage as a present from Mrs. Taylor, the mother or grandmother of Governor John Taylor. I think he sold it to Joe Black. I never had any other evidence that Major Stark owned it, only from his own statements. I heard his sisters, Martha, Mary, and Emma, say that it was a present from Mrs. Taylor. I heard the family say so. The lot of land was given to Major Stark and three maiden sisters; the sisters sold their interest to Major Stark long before I was married. I heard him say that he had sold the property. I never relinquished dower," &c.

The defendant proved that he had a deed of the premises occu-

pied by him from the heirs of Latta (March, 1860), which was destroyed when Columbia was burned during the war. He was allowed, against objection, to state verbally that, "to the best of his knowledge," Latta bought from J. A. Black, and then to introduce what purported to be a conveyance (1840) by N. A. Peay, as trustee for A. F. Peay, to Jos. A. Black, of "all that lot or parcel of land lying and being in the town of Columbia, containing four acres, being one square in said town, bounded north by Walnut street," &c., and reciting that it was the lot which had been conveyed to him (Peay) by B. F. Taylor, executor of Robert Stark, deceased. It thus, for the first time, was intimated that the street known as "Blanding" had formerly been called "Walnut street"; but it still did not appear how the lot had ever become the property of Robert, the father of Theodore Stark.

In reply the petitioner offered as a witness A. R. Taylor, who testified that he had resided all his life—seventy-one years—in Columbia; that he was the grandson of the first Thomas Taylor and his wife Ann, and the son of Governor John Taylor. "Major Stark and his maiden sisters, Martha, Mary, and Emma, were grand-nephew and nieces of Thomas Taylor. Mrs. Ann was very fond of the Misses Stark, particularly Martha. Colonel Thomas Taylor died in November, 1833, Mrs. Ann in July, 1834. * * * * Knows the lot now in litigation; have known it ever since I was a boy. It was not built upon until L. F. Hopson built upon it. That part of the town was generally known as 'Taylor's town,' because it was owned by the Taylors. I never heard of Robert Stark owning the land in this case." [Ruled that no testimony be admitted to prove that Theodore Stark owned the land in question. Plaintiff excepted.] The witness proceeded: "According to the best of my recollection the land in this case passed out of the Taylor family in 1833. I am not positive as to the time. The period fixed in my mind was caused by my brother having died in 'nullification times.' [Again ruled that no testimony that Theodore Stark owned the land can be adduced in attacking the deed marked A. Plaintiff excepted.] Thomas Taylor was the second son of his father, Thomas Taylor, whose will was admitted in evidence," &c.

On the next day after it was taken without objection, the

judge of probate, on motion, struck out so much of the testimony of Mrs. Stark as was based on what she heard from her husband, under section 400 of the Revised Code [plaintiff excepted], and after striking out that evidence against objection, proceeded to consider the case without reference to it, and decreed for the defendant on the following grounds: "I. As a matter of fact, Theodore Stark never had possession of the land as set forth in the petition of Mrs. Eliza C. Stark. II. As a matter of law, that Theodore Stark never had a title to the land in question. III. As a matter of law, that Mrs. E. C. Stark, the petitioner, is not entitled to dower in the said land."

From this judgment Mrs. Stark appealed to the Circuit Court, and at the same time gave notice of an application for a new trial, on the ground of surprise and newly discovered evidence in the will of Thomas Taylor, the twelfth clause of which contained a devise "to the children of my niece, Sarah Stark,'" of a square in Columbia, which, although bounded on Walnut street, was probably the identical lot in which dower was claimed. The appeal and motion were both heard by the Circuit judge, who, among other things, ruled that it was error in the probate judge to strike out any part of Mrs. Stark's testimony; "that the motion to strike out came too late, and the whole of the testimony should have been considered;" but after this ruling he went on himself to consider the testimony stricken out (which was in the record), and affirmed the judgment of the probate court. From this judgment Mrs. Stark appeals to this court upon nineteen exceptions; but from the view which this court takes, it will not be necessary to consider them in detail.

In an action by a widow for dower in the lands of her husband, and especially those sold during his life, some indulgence as to proof is regarded proper. She is not required to make strict proof of her husband's title under the issue of non-seizin. She is not the custodian of her husband's title papers, and therefore, in making out a *prima facie* case, the slightest and lowest order of evidence is all that can be exacted at her hands. 2 *Scrib. Dower*, 197; *Forrest* v. *Trammell*, 1 *Bail.*, 78; *Reid* v. *Stevenson*, 3 *Rich.*, 66; *Pickett* v. *Lyles*, 5 *S. C.*, 275. It is very manifest that in this case all the facts were not considered

by the probate judge; but we will not go into the matter of the alleged surprise as to the devise in the will of Thomas Taylor, nor of the exclusion of certain evidence alleged to be cumulative.

We agree with the Circuit judge that it was error on the part of the probate judge to strike out, upon subsequent motion, any part of the testimony of Mrs. Stark not objected to at the time it was given. "The time to object to the incompetency of a witness to speak as to any particular matter is when the testimony is offered. It would be unfair to allow a party to postpone his objection as to competency until after the testimony has been given, for in that case he would be enabled to retain the evidence if it enured to his advantage, and to exclude it if it made against him. Such speculative advantages are discountenanced by the courts." *Burris* v. *Whitner*, 3 *S. C.*, 512.

We think, however, that having made such ruling correctly, the Circuit judge himself should not then have proceeded to consider the evidence which had been stricken out and not taken into consideration by the probate judge; but he should have reversed the judgment and ordered a new trial in the Probate Court. Mrs. Stark was entitled to have the evidence considered in the first instance by the judge of probate. Section 55 of the Revised Code provides that "the Circuit Court shall have appellate jurisdiction of all matters originally within the jurisdiction of the Probate Court." So far as the rejected testimony was concerned, the Circuit judge took original jurisdiction of the case, which we think was error. It was like taking in the appellate court new testimony which had never been before the probate judge, whose judgment was under review upon appeal. See *Griffin* v. *Griffin*, 20 *S. C.*, 486.

The judgment of this court is that the judgment of the Circuit Court be reversed, and the cause be remanded to the Probate Court of Richland County in order that there may be a new trial.