## *IN RE* SOLOMONS' ESTATE.

PROBATE COURT—APPEAL.—PROBATE OF WILL in probate court is a law case, and findings by Circuit Judge on appeal from probate court in such case are not reviewable here.

Before PURDY, J., Hampton, October, 1905.    Affirmed.

*In re* estate of H. M. Solomons, *ex parte* J. B. Bostick against Eliza S. Lawton *et al.*    From Circuit decree, Miss Daisy McTeer appeals.

*Mr. W. B. deLoach,* for appellant, cites: 16 S. C., 46; 31 S. C., 413.

*Mr. A. McIver Bostick,* contra, cites: 1 Ency., 264-5, 522; 2 Brev., 289.

April 14, 1906.    The opinion of the Court was delivered by

MR. JUSTICE WOODS.    This is a contest over the probate of the will of Miss H. M. Solomons.    It is agreed on all sides that after the execution of her will the testatrix, just before her death, undertook to change the sixth clause by adding certain words thereto without observing any of the formalities required to make the change legal.    The point at issue is what were the added words, for it is agreed that the will must stand as it was before the attempted change. When presented for probate the sixth clause with the change made read as follows: "All the rest, residue remainder of my

Estate of every kind whatsoever consisting of South Western Rail Road of Georgia citizens Bank of Savannah, Silver plate furniture, and bedding to Daisy McTeer if I die at Semole and also for my debts to be at of it." The testatrix who herself wrote the entire will was a woman of intelligence and education, and it is manifest from the expressions used that when the latter part of this clause was written she must have been very feeble.

In admitting the will to probate after proof in solemn form the probate judge said in his decree: "It seems to me that the words, 'And also for my debts to be at of it,' in the last part of the sixth clause of the will, might be the words added, and I gather this from an inspection of the will."

On appeal from the probate court, his Honor, Judge Purdy, held that all of this clause after the word "bedding" was inserted after the execution of the will. Included in the words of the Court thus found to be inserted without the proper legal formalities, is the name of Daisy McTeer, the residuary legatee and devisee, and with this change the result of course was that the sixth clause purporting to devise and bequeath the residuary estate failed altogether. This conclusion of fact reached by the Circuit Court is stated in the decree to be founded on the testimony of Mrs. P. H. Allen, and on inspection of the will and comparison of the writing of the latter part of this clause with the other portions of the same clause and of the entire will.

Mrs. Allen testified: "Miss H. M. Solomons died on the 22d of March, 1905; she kept the will in her possession, and asked for it the night before she died, and added something to it—the latter clause of the sixth paragraph, ending with the word bedding; all after that or that clause was added; my mother and myself, with a little child, was present;" but on the cross-examination she said: "I did not read what she wrote, but I knew that the lines that were added to the sixth paragraph was the words that she wrote, and I never read the will until after the death of Miss H. M. Solomons." As the witness says she did not see what words were inserted

and does not indicate how she knew, her statement could not fairly be regarded anything more than an opinion. The evidence, however, furnished by the paper itself from inspection and comparison of the writing stands on a different footing. It is true the paper itself is before us, but the Circuit Court from an inspection and comparison made the finding of fact as to what words were inserted, and the question is whether this Court has the power to review the finding.

All the cases on the subject from *Sullivan* v. *Thomas,* 3 S. C., 531, to *Ex parte Wallace,* 73 S. C., 79, hold that the Circuit Court's finding of fact in a law case is final, in the sense that this Court has no power to review it, unless it is entirely unsupported by eivdence. And it is immaterial in what tribunal the case originated, as is shown by the following examples of its application: trial by court without jury in original jurisdiction by consent, *Johnson* v. *Clarke,* 15 S. C., 80; proceedings in *habeas corpus, Ex parte Reed,* 19 S. C., 604; attachment, *Grollman* v. *Lipsitz.* 43 S. C., 338, 21 S. E., 272; appeal from magistrate's court in ordinary actions, *Sparks* v. *Davis,* 25 S. C., 381; or in special proceedings, *Moultrie* v. *Dixon,* 26 S. C., 298, 2 S. E., 24; appeal from County Board of Commissioners, *Tinsley* v. *Union County,* 40 S. C., 276, 18 S. E., 794; appeal from probate court in action of dower, *Ex parte Wallace, supra.* On the other hand, as is said in *Sullivan* v. *Thomas, supra,* "When the nature of the right in controversy, or of the relief sought in any case is such that, prior to the Code. it would have been appropriately pursued in the Court of Chancery, it will be regarded as within the expression 'cases of Chancery,' and under the appeal given by the Code this Court will exercise over such case a jurisdiction to correct errors both of fact and law."

It is obvious that the court of probate has had conferred upon it jurisdiction in some matters in chancery, such, for instance, as the accounting of administrators, executors and guardians, sale of real estate in aid of assets, &c. In cases of this character like *Black* v. *White,* 13 S. C., 37; *Gunter*

v. *Gunter,* 18 S. C., 198, and *In re Covin's Estate,* 20 S. C., 471, originating in the probate court, this Court has not held the finding of the Circuit Court as to questions of fact to be final, but subject to be reviewed and reversed as in other appeals in chancery, if opposed to the clear weight of the testimony.

Under our statute, however, other matters fall under the jurisdiction of the court of probate which never were within the jurisdiction of the Court of Chancery, and as to these this Court has no power under the Constitution to review the finding of fact of the Circuit Court made by that Court on appeal from the probate court. One of these matters is the probate of wills, which by the common law was under the control of the ecclesiastical courts. Under the act of 1839 (11 Stat., 46), the court of ordinary had jurisdiction of the probate of wills; and the appeal from the ordinary was not to the Court of Equity but to the Court of Common Pleas, where all questions of law and fact were tried anew with or without a jury. In *Myers* v. *O'Hanlon,* 12 Rich. Eq., 203, it is said: "Upon the trial of such issues the same rules of evidence, mode of examination, and forms of procedure, are observed as on the trial of original causes in that Court. In truth, the validity of contested wills is tried and determined practically in the Court of Common Pleas. The primary decree of the ordinary in such controversies is regarded by the parties as comparatively immaterial. It is upon the appeal to the Law Courts that the actual contest, the substantial trial, really occurs. In legal construction, the Court of Common Pleas has but appellate jurisdiction in such cases. But by the express provision of the act of 1839, if an issue of fact is involved, the cause is to be tried anew, as though it were an original cause in that Court, and the parties are at liberty to raise new questions, never considered by the ordinary, or even made before him." *Peebles* v. *Smith,* 8 Rich., 90; *Ex parte Apeler,* 35 S. C., 417, 14 S. E., 931.

This must, therefore, be regarded a law case, and the Circuit Court's finding of fact is conclusive.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.