7645

MORDECAI, EXECUTOR, v. CANTY.

1. APPEAL—WILLS.—On appeal from decree of Circuit Court on appeal from judgment of probate court in proof of will in solemn form, findings of fact by the Circuit Court are not reviewable here.

2. WILLS—BURDEN OF PROOF.—When the formal execution of a will is proved, a *prima facie* case is made out and burden is then on contestants to show invalidity.

3. IBID.—PARTIES.—Any person interested in invalidating a will is a proper party to the proof of the will in solemn form in the probate court.

4. IBID.—APPEAL.—The Circuit Court on appeal from probate court in proof of will in solemn form may hear appeal first, determine the legal issues and remand case to probate court for new trial without submitting to the jury in that court the issue of will or no. will.

5. IBID.—EVIDENCE.—A DECLARATION OF TRUST made by an executor, the sole beneficiary of the will should be admitted in probate court in proof of will in solemn form.

6. IBID.—WITNESSES to a will should give attention to testator's sanity at time of execution, but failure on their part to testify as to sanity will not invalidate the will.

7. WILLS.—Contestant of a will may rely solely on the evidence of the subscribing witnesses to show invalidity.

8. IBID.—RES JUDICATA.—Where Circuit Judge does not undertake to pass final judgment on the facts on appeal from probate court in contesting a will his remarks as to sufficiency of evidence are not *res judicata*.

9. REHEARING refused.

Before SHIPP, J., Charleston, ———, 1909.   Affirmed.

Petition in probate court for Charleston county by T. Moultrie Mordecai, executor of the will of Michael C. O'Neill, against Michael V. Canty, Edmund Kamble and others, praying proof of will in solemn form. From Circuit decree, reversing judgment of probate court, and remanding case for new trial, defendants, Elizabeth F. O'Neill and Mary A. O'Neill, appeal.

*Messrs. Logan & Grace,* for appellants, cite: *That the will was drawn by the exclusive beneficiary's law partner raises a*

*rebuttable presumption against the validity of the will.*
Schouler on Wills, Par. 245; Remsen on Wills, Par. 4; 82
S. C. 40; 25 N. Y. 9; 1 Bail. 92; 12 Rich. 232; 2 Rich. 229;
*Sale* v. *Dale*, N. J. Eq.; 1 Head 1; 1 Redf. N. Y. 238. *Exe-
cution by mark when testator could write his name shifted
burden to prove will on proponent:* 81 S. C. 297; Code 1902,
2476; 1 Redf. N. Y. 238; 3 Strob. 302; Schouler on Wills,
Par. 305 and notes. *This burden also shifted when it was
shown that the sole beneficiary was the attorney of testator
who drew the will:* Woener Am. L. of Adm. Par. 32;
Schouler, Pars. 245, 246, 240; Page on Wills, Pars. 405-6,
414; 36 George (Miss.) 243. *The burden is on him who
offers a will scratched to show it was mutilated before execu-
tion:* 4 Moore P. C. 419; 7 Id. 320; 16 Q. B. 745; 1 Wms.
Exrs. 130; 5 Redf. (N. Y.) 544; 2 Denm. 160; Schouler,
Pars. 435, 240; Page on Wills, Pars. 432, 299. *A later
writing should not be probated:* Schouler, Par. 281. *No.
presumption of capacity arises where the subscribing wit-
nesses took no notice of testator's sanity:* Page on Wills; 1
Bay 335; 49 S. C. 159; 1 Green. Par. 440; 3 Mass. 237;
Schouler Par. 169-70, 175-6, 181-2; 82 S. C. 40; 4 Burn
Ecc. L. 85; 2 R. & M. 1; 12 Rich. 232; 1 S. C. 254; Page,
Par. 208. *Case should not have been remanded to probate
court for trial de novo:* 7 S. C. 163; 33 S. C. 442; 16 S. C.
456. *Declaration of trust is not competent:* 12 Rich. 232;
Code 1902, 2476; Schouler Par. 281.

*Mr. Henry A. M. Smith,* for executor, contra, cites: *As
to parties:* Code of Proc., secs. 64, 139; 97 U. S., 425; 184
U. S., 236; Pom. Code Rem., 317, 319; 9 S. C., 197. *Wit-
nesses to the will not required to examine testator as to
sanity:* 1 Wormer on Am. L. Ad., 35; 16 Ency., 604; 1
Bay, 335; 1 S. C., 254; 1 Mill's Con. R., 216; 4 McC., 183;
12 Rich., 247; 3 Hill, 68; 8 Rich., 135; 9 Rich., 136; 49
S. C., 159; 65 S. C., 538; 82 S. C., 40. *Judge of probate
is Judge of issues of fact in first instance:* Code, 1902,
2491, 2493; Code of Proc., 55, 56, 57, 58, 59, 60.

*Concurrent finding of probate and Circuit Court will not
be disturbed:* 13 S. C., 37. *The Circuit Court is a court
of appeals to the probate court:* 4 S. C. 44; 33 S. C.,
447; 35 S. C., 417; 57 S. C., 163. *Procedure in such cases:*
3 Strob., 52. *Will may be executed by mark:* 3 Strob.,
303; 39 S. C., 524; 46 S. C., 313. *Presumption is in favor
of will written by beneficiary:* 2 Rich., 228; 12 Rich., 248.

*Messrs. Ficken, Hughes & Ficken,* for St. Francis Xavier
Infirmary, contra, cite: *The infirmary is a proper party
and should be retained on the record:* Code 1902, 2491;
Code of Proc., 64, 139; Pom. Code Rem., 226; Hawes
on Par. to Actions, sec. 18; 122 Mass., 400.

*Mr. J. K. P. Bryan,* for College of Charleston, contra.

August 2, 1910.   The opinion of the Court was deliv-
ered by

Mr. Justice Hydrick.   Two papers, each purporting to
be the last will of Michael C. O'Neill, were admitted to
probate in common form in the probate court of Charleston.
By the first, which bears date September 5, 1907, legacies
are given to Mary and Elizabeth O'Neill, James and Henry
Corbett, St. Francis Xavier Infirmary, the trustees of the
College of Charleston, Walford Johnson, and the residue
to Edmund Kemble and J. W. O'Connell.   By the second,
which bears date September 19, 1907, the whole estate
is given to T. Moultrie Mordecai, who is named executor,
with full power of sale and disposition at his discretion.
The executor filed with this will, when it was admitted to
probate, a declaration of trust bearing date September
19, 1907, which contained the following recital: "Whereas,
Michael C. O'Neill has this day made a will devising his
entire estate to me, and appointing me sole executor there-
under.   Now, therefore, I declare that subject to the pay-
ment of his debts, and the legacies and annuities herein-

after mentioned, I hold the said estate in trust for William Henry Corbett and James Corbett, of New York City, N. Y." Following this recital a number of gifts and annuities are provided for.

Upon the petition of Michael V. Canty, alleging that he is an heir of testator and interested to invalidate both wills, the executor of the will of September 19th was ordered to prove the same in due form of law. He filed his petition, containing the usual allegations, and also an allegation of the probate, in common form, of the will of September 5th. The beneficiaries under the will of September 5th, and the heirs of testator were made parties. Mary and Elizabeth O'Neill and Kemble and O'Connell answered, denying the validity of the will of September 19th; and St. Francis Xavier Infirmary answered, admitting the validity thereof. The other respondents do not appear to have answered.

On motion of attorneys of Mary and Elizabeth O'Neill, the names of all respondents, except those alleged to be heirs of testator, were stricken from the record as improper parties.

The three subscribing witnesses to the will of September 19th were examined. They testified that, at the suggestion of Mr. Mordecai, Mr. O'Neill acknowledged the paper to be his will and requested them to witness it, and they proved the formal execution thereof. The declaration of trust was proved and offered in evidence, but excluded on the ground that it was not a part of the will, not having been referred to therein, and was, therefore, irrelevant at that stage of the case. The Court ruled, however, that it might become admissible in reply to the evidence against the will.

On close of petitioner's testimony, Mary and Elizabeth O'Neill moved to dismiss the proceeding, and to have the will of September 19th adjudged not to be the last will of testator, on the ground that a *prima facie* case had not been made out in favor of said will. The motion was based on

numerous grounds, which raised, however, practically only two points: (1) That the witnesses to the will had not ascertained and were, therefore, ignorant of and could not testify to the testamentary capacity of the testator. (2) Because it appeared in evidence that the relation of client and attorney existed between the testator and executor; that the will was in the handwriting of the executor's partner; that it was signed by testator's mark, without any explanation of why he did not sign his name, though he could write; that it was executed in the private office of the executor, no one being present, except the executor, the testator and the witnesses, who were the executor's private clerks; that its date appeared to have been altered, and the witnesses were unable to fix the date of execution; that another will of only a few days' anterior date was in existence, and that the executor was the sole beneficiary; that these facts and circumstances, one or more in combination, raised such a presumption against the validity of the will as destroyed the *prima facie* case made by proof of formal execution, and shifted the burden to proponent to prove testamentary capacity and intention.

The probate court overruled all the grounds, except the first. As to the others, the Court said that, having excluded the declaration of trust, which was evidently offered for the purpose of showing that the executor took no beneficial interest under the will, and having held that it might become admissible in reply to evidence against the will, it would stultify itself, if it sustained the motion on these grounds. As to the first, the Court held that, under the authority of *Heyward* v. *Hazzard,* 1 Bay, 335, the failure of the witnesses to ascertain the mental capacity of the testator and give evidence thereof was fatal to the will. Thereupon, a formal decree adjudging the will propounded not to be the last will of testator was entered.

From this decree, the executor and Mary and Elizabeth O'Neill and St. Francis Xavier Infirmary appealed to the

475 MORDECAI v. CANTY.

Circuit Court. The executor's exceptions were numerous, but they really assigned only three grounds of error: (1) In sustaining the motion on the ground stated; (2) in excluding the declaration of trust; (3) in striking out the parties named as beneficiaries under the will of September 5th. The appeal of the Infirmary also alleged error in striking out said parties. Mary and Elizabeth O'Neill presented numerous exceptions, but, in one form or another, they involved only the point that the probate court erred in not sustaining the second ground of their motion, as it is above stated. They also served notice that they would move the Circuit Court for a trial *de novo* in that Court, and for the submission to a jury therein of an issue of will or no will.

Upon the call of the case in the Circuit Court, the motion for a trial *de novo* therein before a jury was pressed, but the Court declined to pass on the motion, until the appeal was heard. Having heard the appeal, the Circuit Court reversed the judgment of the probate court, and remanded the case for a new trial, holding that the probate court erred: (1) In striking from the record, as improper parties, the beneficiaries under the will of September 5th; (2) in holding that the failure of the witnesses to ascertain the testamentary capacity of the testator and give evidence thereof was fatal to the will; and (3) inferentially, as will be seen by the quotation from the Circuit decree below, in excluding the declaration of trust. The Court further held that the probate court did not err in refusing to sustain the motion to dismiss the proceeding and declare the will invalid on the other grounds urged by the appellants. The disposition of these grounds by the Circuit Court was as follows: "I have carefully considered the other grounds of the motion to dismiss, and I am satisfied with the reasoning of the judge of probate, and think that he properly refused to dismiss the proceedings on these grounds. It was contended before the judge of probate, and also in

the argument before me, by contestants, that the will should be set aside, because it appeared that the will left the entire estate to Mr. Mordecai, between whom and the testator there had existed the relation of attorney and client; that the will was in the handwriting of one of Mr. Mordecai's law partners, and was witnessed by three of the clerks or stenographers in Mr. Mordecai's office. It is very true that the law looks with jealousy upon the dealings of an attorney with his client, and will require, upon the part of the attorney, the utmost good faith and fair dealing; but I think the judge of probate properly refused to set aside the will upon the above grounds, and especially in the light of the declaration of trust, filed with the probate court when the will was first offered for probate. Certainly the law puts no constraint upon the power of a person to dispose of his property as he sees proper. He may give it to a stranger, or to one having no claims upon him, if he sees proper. *Lee* v. *Lee,* 4 McC., 195. The contestants, upon another trial, will have full opportunity to show any want of good faith, unfair dealings, undue influence, or any other ground that they can, why the will should not stand, but certainly they have failed to bring out facts sufficient on the cross-examination of witnesses for petitioner, or from the will itself, to set it aside without other proof."

From this decree, Mary and Elizabeth O'Neill appealed. The grounds of their appeal are too numerous and lengthy to set them out in full. They present the following assignments of error: (1) In not holding that the probate court erred in refusing to sustain their motion on the other grounds urged by them; (2) in holding that the beneficiaries under the will of September 5th are proper parties to this proceeding; (3) in refusing their motion for a trial *de novo* before a jury in the Circuit Court; (4) in not specifically passing upon the admissibility of the declaration of trust; (5) in not sustaining the ruling of the probate court, on the ground upon which it was based.

The grounds, other than the one sustained by the probate court, upon which appellants urged that the will should be declared invalid, involved a consideration of certain facts, which they alleged appeared in evidence, and the weight and sufficiency of those facts, and of the inferences and presumptions properly arising therefrom. This being a law case, the findings of the Circuit Court, upon questions of fact, are not reviewable in this Court. *In re Solomon's Estate,* 74 S. C., 189, 54 S. E., 207; *Thames* v. *Rouse;* 82 S. C., 40. These grounds involved also a question of law, whether, on proof of the facts and circumstances therein mentioned, the burden shifted to the proponent of the will to prove affirmatively testamentary capacity. Without undertaking to review the cases, the effect of the decisions of this Court upon that question is, that when the formal execution of a will is admitted or proved, a *prima facie* case is made out; and, as a general rule, subject to some exceptions, the burden is then on the contestants to prove fraud, undue influence, incapacity, or other ground of objection to the will, and this burden remains upon them to the end. *Hobby* v. *Bobo,* reported in a note to *McKnight* v. *Wright,* 12 Rich., 247; *Black* v. *Ellis,* 3 Hill, 73; *Scarborough* v. *Baskins,* 65 S. C., 558, 44 S. E., 63; *Thames* v. *Rouse,* 82 S. C., 40.

Appellants contend that section 2491, Code 1902, provides who shall be made parties to such proceedings. That section does provide that, upon the filing of a petition to prove a will in due form of law, "all such persons as would have been entitled to distribution of the estate, if the deceased had died intestate, shall be summoned to answer the petition." While such persons are, by the language of the statute, made necessary parties, there is nothing in the language to indicate an intention that other persons who may be interested in contesting a will shall not be made parties. The first two lines of the section

seem to indicate the contrary: "Probate in common form shall be good, unless some person or persons interested to invalidate the said paper as a will shall give notice to the judge of probate," etc. This language seems to indicate an intention that any person interested to invalidate a will, whether an heir or not, may give the notice to require it proved in due form of law. The beneficiaries of an older will may be more interested to invalidate a later will than the heirs. It is a fundamental and universal principle of law that no man shall be concluded by a judgment, until he has had his day in Court. The beneficiaries under the will of September 5th, were interested to invalidate the will of September 19th, and their rights would not have been concluded by the judgment, unless they had been made parties. The executor had the right to have them made parties to the end that he might not be compelled to litigate with them the same question, which he had litigated with the heirs. It is not necessary to look for any statute conferring power on the probate court to make them parties. When jurisdiction of a subject matter is conferred upon a Court, the power to bring before it all necessary and proper parties for the determination of the matter follows as an incident to the jurisdiction.

There was no error in refusing the motion for a trial *de novo* before a jury, until after the appeal was heard, for the reason that it might have appeared, on hearing the appeal, that only questions of law were involved, and, in that event, there would have been no issue for a jury. Having discovered from a consideration of the appeal, that issues of fact were involved. the Court might, in its discretion, have ordered a trial *de novo* before a jury, instead of reversing the judgment and remanding the case to the probate court for a new trial. That might have been the better course; for, as said in *Myers* v. *O'Hanlon*, 12 Rich. Eq., 203-4: "In truth, the validity of contested wills is tried and determined prac-

tically in the Court of Common Pleas. The primary decree of the ordinary in such controversies is regarded by the parties as comparatively immaterial. It is upon the appeal to the law courts that the actual contest, the substantial trial, really occurs." *Prater* v. *Whittle,* 16 S. C. 41. But that was a matter resting in the sound discretion of the Circuit Court, whose order, as to that matter, is not appealable. *Lampley* v. *R. R.,* 77 S. C., 319, 57 S. E., 1104; *Jones* v. *Woodside Cotton Mills,* 83 S. C., 565, and cases cited. The Circuit Court unquestionably had the power to reverse the judgment and order a new trial. *Stark* v. *Hopson,* 22 S. C., 42; *Ex parte White,* 33 S. C., 442, 12 S. E., 5. The fact that the probate court had decided the case on a question of law, without considering the facts, was a sufficient reason for ordering a new trial in that Court, in order that the parties might have the judgment of the court of original jurisdiction, before whom the witnesses were examined, upon the issues of fact.

The Circuit Court held, inferentially, at least, that the declaration of trust was admissible; for, in passing upon appellants' exceptions, the Court said: "I think the judge of probate properly refused to set aside the will upon the above grounds, and especially in the light of the declaration of trust," which shows clearly that the Court held that the declaration of trust should have been admitted. It was competent and relevant, because it tended to rebut the presumption which appellants contend arises from proof of the procuring by a party of a will under which he takes an interest. We are not called upon here to discuss the circumstances under which such a presumption does arise, or the force and effect which it should have. That depends upon the circumstances. *Tomkins* v. *Tomkins,* 1 Bail., 92; *McKnight* v. *Wright,* 12 Rich., 247; *Hobby* v. *Bobo, Id.* In *McKnight* v. *Wright* such a declaration, though made long after the execution of the will, was

admitted, though it does not appear that its admissiblity was questioned.

The fifth assignment of error cannot be sustained. In the case of *Heyward* v. *Hazzard,* 1 Bay, 344, which was relied upon by the probate judge to sustain his ruling, it is said: "The third requisite (in the execution of a will) is the *attestation.* The true construction of law under this head, has always been, that the act called the attention of the witnesses to the situation of the testator himself; and this particularly relates to his *sanity.* The witnesses are not called upon by the act to attest the mere *factum* of signing, but the *capacity of the testator.* The business, then, of the persons required by the statute to be present at executing a will, is not barely to attest the corporeal act of signing, but to *try, judge* and *determine* whether the testator is *compos* to sign; that is, of a sound mind, as every will, upon the face of it, imports. And upon every controversy, the heir at law, or other person interested, has a right to a proof of sanity from every one of them whom the statute has placed around the testator. There is no other security but the witnesses and their integrity." The language above quoted was used by the judges in their charge to the jury in a case in which the validity of a will was in question. At that time, the judges were allowed to advise the juries as to the weight which should be given the testimony. It appeared that testator was subject to fits of insanity, occasioned by hard drinking, but after these fits were over, he regained his senses. The witnesses to the will all testified that, at the time of its execution, he was "perfectly in his senses." The witnesses *contra* testified as to his appearances at other times. The judges were evidently trying to impress upon the jury the weight they should give the testimony of the witnesses to the will, who gave evidence of testator's condition at the time of its execution, for they charged the jury further: "The three witnesses to the will all swear positively that

he was perfectly in his senses the day it was signed; and there is nothing to impeach, in the least, their credibility." So that, when the circumstances, under which the language above quoted was used, are considered, it loses much of its force in establishing a general principle of law applicable to all cases. But, while the language quoted does indicate the duty of persons called upon to witness a will, and the right of the parties to their opinion, it does not go to the extent of holding that, if they fail in the performance of that duty, and are unable to give any opinion as to the sanity of the testator, the will must, therefore, be rejected. Nor do the later decisions of the Court sanction such a proposition. The mere fact of attesting a will should be and is taken by the law to be tantamount to an expression of opinion on the part of the witnesses that the testator is possessed of testamentary capacity; for certainly no credible person of intelligence would attest such an instrument, if he knew or had reasonable cause to believe that testamentary capacity was wanting. In this sense the witnesses are to "try, judge and determine" whether the testator is capable. But surely where nothing appears to the contrary, the witnesses may rely and act upon the general presumption of sanity and testamentary capacity. *Kinloch* v. *Palmer,* 1 Mills, 225; *Lee* v. *Lee,* 4 McC., 183; *Verdier* v. *Verdier,* 8 Rich., 155; *Black* v. *Ellis,* 3 Hill, 73; *Welch* v. *Welch,* 9 Rich., 136; *Hobby* v. *Bobo,* 12 Rich., 247. In *Black* v. *Ellis* two of the witnesses were dead. The third gave positive evidence of an utter want of testamentary capacity. Yet the will was established upon evidence *aliunde* of capacity. In *Verdier* v. *Verdier* two of the witnesses were dead and their signatures were proved. The third recognized his signature, but had no recollection of the transaction. *Held,* the will was sufficiently proved. In *Kaufman* v. *Caughman,* 49 S. C., 165, 27 S. E., 16, this Court said: "It is not incumbent upon the proponent of a will to prove in the examination in chief

31—86

the fact of the testator's sanity by taking the opinion of the subscribing witnesses on that point. When proponent proves the formal execution of a will, including the attestation and subscription of the witnesses, as required by law, a presumption of testamentary capacity arises, since every adult is presumed sane until the contrary appears, and since witnesses, when they attest and subscribe a will as such, not only attest the *fact* of the testator's signing, but also of the testator's *sanity*."

Judgment affirmed.

MR. JUSTICE GARY *concurs in the result.*

September 29, 1910. PER CURIAM. The appellants entirely misconceive the ruling that, after a *prima facie* case had been made out in favor of the will, by proof of its formal execution, the burden was upon them to prove fraud, undue influence, incapacity, etc., in supposing that the court held that, in sustaining that burden, they could not rely solely upon the testimony of the witnesses examined by the proponent, but must themselves necessarily have introduced testimony. Of course, the contestants of any will, in any case, may, if so advised, rely entirely upon the testimony of the witnesses and other evidence introduced by the proponent.

As none of the exceptions questioned the propriety of the circuit judge's making any findings of fact, this court did not consider that question; but, as he did not undertake to pass a final judgment on the facts, but granted a new trial, his remarks in passing on the exceptions, as to the sufficiency of the testimony, are not *res judicata.* *Stark* v. *Hopson,* 22 S. C., 46.

No principle of law or question of fact having been overlooked or disregarded, the petition is dismissed and the stay of remittitur revoked.