12556

HODGE ET AL. v. SOVEREIGN CAMP WOODMEN OF THE WORLD, ET AL.

(146 S. E., 220)

*Messrs. R. R. McLeod, L. D. Jennings,* and *Miller, Lawson & Stokes,* for appellant,

*Messrs. Epps & Levy,* and *Reynolds & Reynolds,* for respondents,

January 9, 1929.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This action is based on a certificate of life insurance. The insurer, Woodmen of the World, deposited with the clerk of the Circuit Court the amount due on the certificate and has no interest in this controversy, which involves only the disposition of the proceeds.

On June 28, 1924, Alme O. Hodge died leaving a $3,000 life insurance certificate of the Woodmen of the World, which had been in effect about twelve years and in which his brother Lucius L. Hodge was named sole beneficiary. Shortly before his death he made an effort to change the beneficiary by naming his sister Mrs. Katie Hodge Jenkins as beneficiary in the sum of $1,000 and his brothers Everette E. Hodge, Henry Hodge, McBeth Hodge, Paul Hodge, Harold L. Hodge and Lucius L. Hodge, as the other beneficiaries, to receive in equal proportions the balance of the insurance proceeds. Mrs. Jenkins and the five brothers other than Lucius, as plaintiffs, are claiming the insurance proceeds as beneficiaries under the attempted change, and Lucius, as defendant, is claiming as the beneficiary under the original certificate. Lucius L. Hodge also sets up a contract between himself and the deceased by which he was to drop an insurance policy on his own life and assist the deceased in paying the premiums on the certificate, and the deceased was to make him sole beneficiary; interposes the defense that Alme O. Hodge was mentally incompetent to effect a change of beneficiary; and alleges that any such attempted change was the result of overpersuasion and undue influence brought to bear by the plaintiffs upon the deceased brother in his weakened condition.

The case was tried at the November, 1926, term of the common pleas Court for Sumter County before Judge Rice and a jury. At the conclusion of the testimony, counsel for the plaintiffs and counsel for the defendant each moved for direction of a verdict. Both motions were overruled, and the cause was submitted to the jury, who found in favor of the plaintiffs. The Court also overruled defendant's motion for a new trial. From the orders refusing a directed verdict for him and overruling the motion for a new trial, the defendant appeals to this Court upon exceptions which present, as suggested by him, the following questions: (1) Was there a change of beneficiary in the manner

required by the constitution and laws of the Woodmen of the World? (2) Did Alme O. Hodge have sufficient mental capacity to effect a change of beneficiary? (3) Was Alme O. Hodge estopped to make a change of beneficiary? (4) Was the change of beneficiary, if any, brought about by undue influence? (5) Some minor points.

I. The insurance certificate contains this provision:

"15. *Change of Beneficiary.* Should a member desire to change his beneficiary or beneficiaries, he may do so upon the terms and in the manner provided in the Constitution and Laws."

Section 72 of the Constitution, Laws, and By-Laws of the Woodmen of the World is as follows:

"Section 72. (a) Should a member desire to change his beneficiary or beneficiaries, he may do so upon the payment to the Sovereign Camp of a fee of twenty-five cents, with his request written on the back of his certificate, giving the name or names of such new beneficiary or beneficiaries, which sum, together with his certificate, he shall deliver to the clerk of a camp for attestation, who shall endorse thereon the fact of such payment and delivery and the date of the same, and forward to the Sovereign Clerk; and in case of the death of such member thereafter and before the issuance of a certificate payable to such new beneficiary or beneficiaries, then and in that event the amount payable upon such certificate shall be paid to such newly designated beneficiary or beneficiaries according to the terms of such member's request; and such camp clerk shall at once forward said payment and certificate to the Sovereign Clerk, and upon receipt thereof the Sovereign Clerk shall issue and return a new certificate, subject to the same conditions and rate as the one surrendered, which conditions shall be a part of the new certificate, in which he shall write the name or names of the new beneficiary or beneficiaries and shall record said change in the proper books of the Sovereign Camp.

"(b) Provided, no change of beneficiary shall be allowed or be binding on this society or any beneficiary which is not requested in writing as herein provided more than twenty-four hours before the death of said member.

"(c) In the event the beneficiary certificate is lost or the possession thereof is for any reason withheld from the member desiring such change of beneficiary, before the change shall be made the member shall furnish the Sovereign Clerk satisfactory proof under oath of the loss of the certificate or proof under oath of the facts and curcumstances of the withholding of such certificate from his possession, as the case may be, and waiving for himself and beneficiary or beneficiaries all rights thereunder, whereupon on payment of twenty-five cents the Sovereign Clerk, if such proof is satisfactory to him, shall issue and return a new certificate in lieu of the certificate lost or withheld from him containing such changes as required by the member, if within our laws."

There was testimony tending to show that the certificate was in the possession of Lucius L. Hodge, who refused to deliver it to Alme O. Hodge upon his request, and that thereupon Alme O. Hodge executed an application for a new certificate, with the beneficiary changes already referred to. This application is as follows:

"State of South Carolina, County of Sumter—ss.

"I, Alme O. Hodge being first duly sworn according to law, hereby state that the beneficiary certificate issued to me by the Sovereign Camp of the Woodmen of the World on or about the 29 day of January, 1920, numbered 75032 and issued in the amount of three thousand dollars ($3,000.00) payable to Lucius L. Hodge, who bears relationship to me of brother, as a member of Hartsville Camp No. 133, located at Hartsville, State of South Carolina, said beneficiary certificate has been in the possession of my brother Lucius L. Hodge, the beneficiary named therein, and on information and belief it is still in his possession, and I am informed

(state fully what has become of certificate) he refuses to deliver it to me or to my order.

"I certify that the aforesaid certificate has not been by me assigned to secure payment of any sum of money to any person or persons whatsoever and has not been otherwise disposed of by me. I therefore make application to the Sovereign Camp of the Woodmen of the World for the issuance to me of a duplicate certificate of membership in said fraternity, and in consideration of the delivery to me of a duplicate certificate I do hereby waive for myself, my heirs, assigns and beneficiaries all rights and benefits under said certificate and agree to accept said duplicate in lieu thereof, and do, for myself, my heirs, assigns and beneficiaries hereby relinquish, in case of my death, all claims against said Sovereign Camp of the Woodmen of the World of any sum or sums in excess of the amount stated in said duplicate certificate and revoke former designation of beneficiary and order that my sister, Katie Hodge Jenkins, be the beneficiary designated in said duplicate certificate in the sum of one thousand dollars ($1,000.00), and the balance to be divided equally between my following brothers: Lucius L. Hodge, Everett E. Hodge, Henry Q. Hodge, Paul B. Hodge, Harold L. Hodge, and McBeth B. Hodge.

his

Alme O.   X   Hodge.

mark

"Witnesses:

"William M. Reynolds.

"J. D. Wilder.

"Subscribed and sworn to before me in the State and County aforesaid this 5th day of June, 1924.

"William M. Reynolds, Notary Public.

"[Seal of William M. Reynolds, Notary Public.]

"Attest: K. G. Chapman, Clerk of Hartsville Camp, No. 133, at Hartsville, State of S. C., [Seal of Hartsville Camp No. 133 Woodmen of the World.]"

On back:

"Mr. Alme O. Hodge is practically blind from the effects of his illness and I have therefore taken his signature by 'mark,' with one other witness besides myself.

"William M. Reynolds."

The appellant contends that the requirements for a change of beneficiary were not met, in that the application for a new centificate did not contain the information required by section 72, that there was no proof that such information was given under oath, and that there was no proof that the other requirements of that section, such as the payment of 25 cents to the Sovereign Clerk, were met. Only a cursory examination of the application is necessary to determine that it contains all the data required under section 72, and there was ample testimony from which the jury might have reached the conclusion that all the other requirements of the section were met. The appellant lays stress upon the matter of the oath, and insists that no oath was administered to Alme O. Hodge when he signed the application. Without giving all the testimony on this point, we quote from the witness William M. Reynolds, who attested the application as notary public: "After having filled this out I read the oath over to Mr. Hodge, and asked him if he swore to that and he said 'Yes,' and I read the whole thing to him, and I said, 'You want to sign that?' and he said 'Yes.' I wrote his name and he touched the pen and made his mark."

Under the authority of *State v. Holladay,* 120 S. C., 154, 112 S. E., 827, if Hodge in signing the paper knew that he was taking an oath, it was sufficient. Certainly, the testimony of Mr. Reynolds, if believed by the jury, would justify the finding that the application was made under oath.

The whole question as to whether a change of beneficiary was made in the manner required by the constitution and

laws of the insurer was properly submitted to the jury with appropriate instructions.

II. The appellant contends that, even if the application for a new certificate was executed in accordance with the requirements of the insurer, the evidence is not susceptible of any other conclusion than that Alme O. Hodge had insufficient mental capacity to effect a change of beneficiary. If this contention is correct, the trial Judge should have directed a verdict for the defendant on that ground or, failing that, should have granted a new trial on the same ground.

For several months prior to his death, Alme O. Hodge was suffering from Bright's disease; and there was testimony tending to show the effect of this disease upon the mind of one afflicted with it, as well as testimony regarding the actual mental condition of Alme O. Hodge at and about the time he executed the application for a new certificate. Aside from lay testimony, two experts, Drs. Powe and Byerly, testified on behalf of the defendant, and two others, Drs. Mills and Mood, on behalf of the plaintiffs. The testimony being in sharp conflict, and this being a case where literally "the doctors disagree," we think that the trial Judge was entirely right in submitting the issue to the jury. There was ample testimony to sustain their finding that the deceased had mental capacity to make the change of beneficiary.

III. The contention of the appellant that Alme O. Hodge was estopped to make a change of beneficiary is based upon the alleged contract between Alme and Lucius, by which Lucius was to drop an insurance polisy on his own life and assist Alme in paying the premiums on his certificate, in consideration of Alme's making him sole beneficiary under the certificate. The appellant contends that the testimony as to this contract between himself and Alme O. Hodge was so conclusive as to establish the contract, and hence the estoppel, as a matter of law. We have carefully examined all the testimony and find this con-

tention to be without merit. The appellant's own testimony on this point is unsatisfactory. It appears that the alleged agreement between him and Alme was made in the office of R. R. McLeod, an attorney of Hartsville, in 1923. His own version of the matter is as follows:

"Q. Now, Mr. Hodge, did you and your brother go to my friend's office in Hartsville some two or three years before he died, and both engage him to effect some change in that insurance? A. That was about one year before he died. I was carrying one thousand dollars in the Southern Life & Trust Company. He said, 'Why not drop yours and keep mine up?' I said, 'All right'—that was in Mr. McLeod's office—and I gave Mr. McLeod my policy and asked him to send it in to the company and get the cash surrender value.

"Q. That was done at the instance of your brother? A. Yes, sir.

"Q. If you had known he was going to change the beneficiary would you have done anything like that? A. No, sir; I wouldn't."

It will be noted that Lucius did not testify that Alme made any agreement to make him sole beneficiary under the certificate or—recalling that he had been the beneficiary for eleven years—not to change the beneficiary. To establish this contract, however, he appears to rely chiefly on the testimony of Mr. McLeod, which on this point is:

"Q. Will you state the substance of what they (Alme and Lucius) said? A. The substance of it was that Mr. Lucius Hodge told me he wanted to surrender a policy of insurance on his own life in the Southern Life & Trust Company, so that he would be able to help his brother carry a policy of insurance in the Woodmen of the World.

"Q. They were both there? A. Yes, sir.

"Q. State whether or not Mr. Alme Hodge confirmed that arrangement? A. Yes, sir; they were both present and went over it with me.

"Q. State whether or not it was a joint transaction? A. Yes, sir.

"Q. In pursuance of the joint instructions, what did you do? A. I fixed up the necessary papers and sent them in to the insurance company, and a few days after got a check for the cash surrender value of the policy."

It will be noted that this testimony fails to show any agreement by Alme O. Hodge to make or to leave Lucius sole beneficiary under his certificate.

The trial Judge submitted to the jury the question whether there had been any such agreement, charging them that if such a contract was made, and if Lucius carried out its terms, then Alme could not change the beneficiary. As the verdict was for the plaintiffs, it necessarily follows that the jury found against the appellant on the question of the contract. Their conclusion was fully justified by the testimony.

IV. For a number of years, Alme O. Hodge spent more or less time at the home of Lucius L. Hodge and was removed from that home to a hospital at Florence on April 1, 1924. Four or five days later he was removed from the hospital to the home of his sister Mrs. Jenkins at Sumter, where he lived and was cared for until his death on June 28. The application for a new certificate with the change of beneficiary was executed on June 5, and the appellant contends that this change was brought about by undue influence exerted over Alme while he was ill and in a weakened condition, physically and mentally, in his sister's home, and that the testimony on this point is conclusive of this issue as a matter of law. This contention cannot be maintained. Aside from the lack of evidence of undue influence, there is positive testimony tending to show that the deceased fully knew what he was doing and was acting on his own initiative in making the change of beneficiary; and the jury were fully justified in finding for the plaintiffs on that issue.

In this connection it is urged that the trial Judge committed reversible error in charging the jury that the burden of proof as to undue influence was on the defendant Hodge, and in not instructing them that on account of relationship of the parties such burden was on the plaintiffs.

In *Wilson v. Wilson,* 117 S. C., 454, 112 S. E., 330, the Court held that where a father deeds property to a child there is no presumption of fraud or of undue influence, and that the mere fact of relationship does not shift the burden to the child to show there was none. The Court, however, said: "Where there is a fiduciary relation between parties, and a business transaction occurs between them, and the superior party obtains the advantage, or a possible benefit, equity will closely scrutinize the transaction and raise a presumption against the validity of the same and throw the burden on him to prove good faith." In the case at bar, no such relationship existed between the parties.

Further, as pointed out by the trial Judge in his order refusing a new trial, as a general rule no presumption arises as to a gift made either by will or to take effect at the donor's death. The natural presumption is that when one dies he will leave his property to those who are nearest to him, and it would be a harsh rule to require such one to prove that the bounty was not obtained by undue influence or fraud. *Mordecai v. Canty,* 86 S. C., 470, 68 S. E., 1049.

V. Several minor points are raised by the exceptions, but we find no merit in any of them.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN, BLEASE, and CARTER concur.