Robert COYNE, Plaintiff-Respondent,

v.

Edward M. LAYTON et al., Defendants-Appellants.

Marie J. SCHOEMEHL et al., Plaintiffs-Respondents,

v.

Rt. Rev. Lloyd A. SULLIVAN et al., Defendants-Appellants.

No. 51866.

Supreme Court of Missouri, Division No. 1.

Nov. 14, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 12, 1966.

Dubail, Judge & Kilker, William C. Maier, St. Louis, for respondents Kingston Coyne and Rolland Coyne.

Martin Schiff, Jr., Clayton, for respondent Robert Coyne.

Jeans & Boudoures, James W. Jeans, St. Louis, for respondent Frances Hake.

Huger, Cramer & Pollmann, Bernard J. Huger, Walter H. Pollmann, St. Louis, for appellants Edward M. Layton and others.

Foster, Vogel & Stroh, John H. Stroh, St. Louis, for appellant Shriners Hospital for Crippled Children.

Margaret M. Nolan, Clayton, for appellant August Kern, Jr.

Heneghan, Roberts & Cole, George E. Heneghan, St. Louis, for appellant St. Vincent de Paul Society.

WELBORN, Commissioner.

This is a will contest action. The proponents appeal from a judgment, entered on a directed verdict, rejecting a purported will.

Martin J. Coyne died a resident of the City of St. Louis on October 12, 1962. Three instruments were filed in the Probate Court of the City of St. Louis, purporting to be Coyne's last will. The earliest was dated April 29, 1959, the next February 19, 1960, and the latest July 18, 1962. On February 21, 1963, the St. Louis Probate Court entered an order, rejecting the 1962 will for the reason that the court's records showed that Coyne had been adjudged to be a person of unsound mind on June 17, 1960. The will of February 19, 1960 was ordered admitted to probate.

Proponents of the 1962 will filed a petition in the St. Louis Circuit Court to have that instrument declared the last will of the decedent. An heir at law of the decedent filed a petition contesting the 1960 will. The two causes were consolidated. On the trial, the proponents of the 1962 will adduced no evidence of the execution of that instrument. No question is here presented regarding the judgment entered on the directed verdict against the proponents of the 1962 will.

Two attesting witnesses, C. J. O'Brien and William Litfiy, testified concerning the execution of the 1960 will. The third attesting witness, William J. Burns, was dead. The will was executed in the sheriff's office on the ground floor of the Civil Courts Building. According to Litfiy, Coyne signed the will in his presence, and he and Burns signed as attesting witnesses in the testator's presence and the presence of each other. O'Brien came in about fifteen min-

utes later and Litfiy was not at McHale's desk, where the execution took place, when O'Brien came in. O'Brien testified that he did not see Mr. Coyne sign the will, but that when he came up to McHale's desk, Mr. Coyne said: "This is my Will. Will you witness this?" O'Brien stated that he signed in Coyne's presence. Both O'Brien and Litfiy expressed the opinion that the testator was of sound mind.

The question of insufficiency of proof of due execution of the will, upon which the trial court's directed verdict was based, arose from Litfiy's testimony. On direct examination, Litfiy testified that he saw Mr. Coyne sign the instrument. To the question: "Did Mr. Coyne tell you that this was his Will?" Litfiy replied: "He did."

On cross-examination, Litfiy, a deputy sheriff at the time, stated that when he entered the sheriff's office, Mr. Coyne was at Chief Deputy McHale's desk. (McHale's wife, a cousin of the testator, was the beneficiary of a $1500 bequest under the will.) Litfiy stated that he "said hello to Mr. Coyne and asked him how he was; he shook hands; then I walked away from the desk and then I was called back over [by McHale]." Litfiy stated that Mr. Coyne said nothing when he went back to McHale's desk.

"Q. You came over and Mr. McHale said to witness this instrument, isn't that right?

"A. That's right.

"Q. As a matter of fact, you didn't know what the instrument was when you wrote your name down, did you?

"A. Well, it wasn't hard to guess.

"Q. Did you know; did anybody tell you?

"A. No.

"Q. Nobody told you, did they?

"A. No."

On further cross-examination, Litfiy stated that the extent of Mr. Coyne's conversation with him was to respond "Fine" to Litfiy's inquiry concerning his health.

The trial court's directed verdict was based upon the conclusion that "there was no testimony that the Testator had asked Mr. Litfiy to sign his Will or that he said that it was his Will * * *." The trial court apparently accepted defendants' contention that Litfiy's testimony on cross-examination repudiated his direct testimony. Here respondents state that, considering the last statement of the witnesses as the one which must be accepted, "there is no evidence whatsover that the testator, Martin J. Coyne, knew Litfiy was attesting the testator's signature as the testator's will, since Litfiy did not know that the instrument was the testator's will. * * * Also, the record is completely barren of facts to establish that Martin Coyne, deceased, requested Litfiy's signature."

However, this position ignores the fact that the will offered in evidence included a complete attestation clause and that the witnesses identified the signatures thereto as their signatures and testified that the testator either signed in his presence, in the case of Litfiy, or acknowledged his signature, in the case of O'Brien.

In German Evangelical Bethel Church of Concordia v. Reith, 327 Mo. 1098, 39 S.W.2d 1057, 1061, 76 A.L.R. 604, the court en banc held that the rule should prevail in this state "that a complete attestation clause showing observance of all statutory requirements raises a presumption of the due execution of a will, if and after the signatures of the witnesses and testator are proven to be genuine." The court further held that adverse testimony from the subscribing witnesses does not destroy the "presumptive evidence that the will was in fact duly executed, * * *." The court stated that such presumptive evidence has "inherent probative force, [and] presents a jury question no matter how convincing the

evidence to the contrary may be. In this state neither the trial judge nor the appellate court can pass on the weight of the evidence in law cases." 39 S.W.2d 1064 [8–11]. Burkland v. Starry, 361 Mo. 348, 234 S.W.2d 608, 40 A.L.R.2d 1217, extended the application of the rule to the due subscription of a testamentary instrument lacking an attestation clause. See also Potter v. Ritchardson, 360 Mo. 661, 230 S.W.2d 672, 678 [8, 9]; Annotations, 76 A.L.R. 617, 40 A.L.R.2d 1223.

█ Under the rule laid down in those cases, the greatest effect that could be accorded Litfiy's testimony, considering only his testimony on cross-examination, would be to create a jury question on the matter of due execution. The direction of a verdict against the proponents was erroneous. German Evangelical Bethel Church of Concordia v. Reith, supra.

According to respondents, the trial court, in reaching its determination, relied upon Wright v. McDonald, 361 Mo. 1, 233 S.W. 2d 19, and Baxter v. Bank of Belle, 340 Mo. 952, 104 S.W.2d 265. Neither case involved a presumption of due execution. Wright involved an attempt to establish a lost will. The alleged attesting witnesses were unable to state that they had attested a will of the alleged testatrix. Baxter involved the sufficiency of evidence to uphold a verdict against proper execution of a will. Neither applies to the situation here presented.

Appellants also attack the circuit court's ruling, striking the amended answer by which they sought to establish the instrument of April 29, 1959 as the testator's last will in the event that the attack on the February, 1960 instrument should succeed.

The 1959 and 1962 wills, along with proof of execution by the attesting witnesses of each, were filed in the St. Louis Probate Court on October 24, 1962. On November 9, 1962, the executors under the 1959 will filed a motion to reject the 1962 will and an application for letters testamentary under the 1959 will and for the probate of that document. On November 14, 1962, the 1960 will, along with proof by the attesting witnesses, was filed. On November 30, 1962, the executors, who were the same in the 1959 and 1960 wills, filed an amended application for probate of will and letters testamentary in which they prayed that the court admit to probate whichever of the 1959 and 1960 wills that it found to be the last will of the decedent. On February 21, 1963, the probate court entered an order rejecting the 1962 will, ordering the 1960 will admitted to probate and granting letters testamentary to the executors named therein. No order was made pertaining to the 1959 will. The first publication of notice of letters was made February 27, 1963.

· On October 2, 1963, the petition seeking to establish the 1962 will was filed in the circuit court. On November 15, 1963, the petition contesting the 1960 will was filed. On February 14, 1964, the court ordered the causes consolidated.

On May 13, 1965, an "Application for the Admission to Probate or Rejection of a Will" was filed in the probate court. The movant was Bernard J. Huger, described in the motion as "a member of the Bar of Missouri." The motion recited that the 1959 will, together with due proof of its execution, had been "presented" to the court within nine months of the first publication of notice granting letters testamentary, but that the document was neither admitted to nor rejected for probate. The prayer was for the admission or rejection of the 1959 will. On June 2, 1965, the probate court made an order rejecting the will.

On June 11, 1965, five of the legatees who were given identical bequests in the 1959 and 1960 wills, filed an amended answer in the consolidated cases. By their answer, they alleged the due execution of the 1959 will, that it had been duly presented to the probate court and that the probate court had rejected the 1959 will by order dated June 2, 1965. The prayer of the answer was for the admission of the 1960 will, with an al-

ternative prayer that, in the event of its rejection, the 1959 will be declared to be the last will of the decedent.

On motions of the plaintiffs in the consolidated action and other defendants, the circuit court struck the amended answer, giving as its reason that "defendants failed to comply with the statutory period of time for filing a suit to establish will."

In their motion for rehearing in the trial court and on this appeal, the ruling of the trial court is attacked as beyond the jurisdiction of the trial court. Appellants' theory is that the trial court, in making its order, must have concluded that the probate court lacked jurisdiction to reject, by its order of June 2, 1965, the 1959 will. They contend that the circuit court had no authority in this will contest action to question the jurisdiction of the probate court. In support of their position, appellants rely upon Canty v. Lehmkuhl, Mo.App., 164 S.W.2d 132, and State ex rel. Shriners' Hospitals, etc. v. Hensley, Mo.App., 385 S.W.2d 820.

■ However, the order of the trial court assigned as its reason for striking appellants' amended answer that appellants "failed to comply with the statutory period of time for filing a suit to establish will." This could refer only to the limitations prescribed by § 473.083 for filing an action in the circuit court, since that is the only statutory provision for "filing a suit to establish will." The circuit court does have jurisdiction to determine, under that section, the timeliness of an action before it. Black v. City National Bank and Trust Company, Mo.Sup., 321 S.W.2d 477. We cannot agree with appellants that the circuit court's ruling was necessarily based upon its view of the probate court's jurisdiction to enter its June 2, 1965 order. The trial court's action might as well have been based upon the position here advanced by respondents that, as

a matter of law, the 1959 will was rejected, for purposes of § 473.083, at the time of the probate of the 1960 will. It might have been based upon the theory, also here advanced, that, as a matter of law, the 1959 will was deemed to have been rejected upon the expiration, under § 473.083, of the time within which the probate court could set aside its order of probate of the 1960 will. Indeed, the trial court's order might also have been based upon a misconception of the applicable law or upon a misunderstanding of the facts. However, "where a court has jurisdiction of the cause and the parties, it will not lose its jurisdiction by reason of an erroneous decision with respect to the facts, or the law, or both." 21 C.J.S. Courts § 27, p. 38.

■ We conclude that appellants have not demonstrated error based upon the trial court's lack of jurisdiction to strike their answers as untimely in the circuit court action. Having chosen to base their charge of error against the trial court upon that court's lack of jurisdiction, appellants are limited to that basis of error on this appeal. Civil Rule 79.03, V.A.M.R. We, therefore, do not consider the merit of the trial court's ruling.

The judgment of the trial court that the paper writing of February 19, 1960 is proved not to be the last will and testament of Martin J. Coyne, deceased, is reversed and the cause remanded. The order striking the amended answer of appellants herein is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.